93 P.3d 1173

Jerome C. HAYES, Plaintiff–Appellant,

and

Island Insurance Company, Inc.,
Plaintiff–Appellee,

v.

Kenneth J. DUTRO and Henry's
Equipment Rental and Sales,
INC., Defendants–Appellees,

and

John Does 1–15; Jane Does 1–15; Doe
Partnerships 1–15; Doe Corporations 1–
15; Doe Entities 1–15; and Doe Govern-
mental Units 1–15, Defendants

and

Jerome C. Hayes, Plaintiff–Appellant,

and

Island Insurance Company,
Ltd., Plaintiff,

v.

Kenneth J. Dutro and Henry's Equipment
Rental and Sales, Inc., Defendants–
Appellees,

and

John Does 1–15; Jane Does 1–15; Doe
Partnerships 1–15; Doe Corporations 1–
15; Doe Entities 1–15; and Doe Govern-
mental Units 1–15, Defendants.

Nos. 24733, 24829.

Intermediate Court of Appeals of Hawai'i.

June 3, 2004.

Certiorari Dismissed July 23, 2004.

Preston A. Gima, Honolulu, On the briefs, for plaintiff-appellant.

Michael N. Tanoue and Kara Moran (The Pacific Law Group, a law corporation) and Shannon L. Wack, Honolulu, On the briefs, for defendants-appellees.

WATANABE, Acting C.J., LIM, and FOLEY, JJ.

Opinion of the Court by WATANABE, Acting C.J.

The dispositive issue in these consolidated appeals is whether the statute of limitations set forth in Hawaii Revised Statutes (HRS) § 431:10C–315(b)(3) (Supp.2003) barred the underlying complaint filed by Plaintiff–Appellant Jerome C. Hayes (Hayes) against

Defendants–Appellees Kenneth J. Dutro (Dutro) and Henry's Equipment Rental and Sales, Inc. (Henry's) (collectively, Defendants) for injuries sustained by Hayes during a work-related motor vehicle accident. The Circuit Court of the First Circuit (the circuit court), Judge Victoria Marks (Judge Marks) presiding, concluded, based on *Cochran v. Pflueger Autos., Inc.*, 72 Haw. 460, 463–64, 821 P.2d 934, 936 (1991), that the complaint was time-barred, since it was filed after workers' compensation benefit payments to or on Hayes's behalf had ceased for two years. Accordingly, the circuit court entered an order granting summary judgment against Hayes and a judgment in Defendants' favor.

Hayes argues that *Cochran* is distinguishable and that, in any event, the circuit court should have used its equitable powers to waive the statute of limitations in this case.

We affirm.

### BACKGROUND

On May 13, 1993, while Hayes was acting in the course and scope of his employment with Kam's Express, Inc. (Kam's), the tractor-trailer he was driving on the H–1 Freeway was rear-ended by a tractor-trailer driven by Dutro. At the time, Dutro was acting within the course and scope of his employment with Henry's.

Hayes sustained severe injuries as a result of the accident and thereafter received workers' compensation benefits from Kam's insurance carrier, Plaintiff–Appellee Island Insurance Company, Inc. (Island Insurance). Island Insurance also paid, on Hayes's behalf, various medical service providers who treated Hayes for injuries sustained in the accident. Of particular relevance to this case are the chiropractic treatment services provided to Hayes by Backworks Hawaii, Inc. (Backworks) from November 10, 1993 through mid-January 1994, for which Backworks invoiced Island Insurance.

On December 21, 1993 and March 1, 1994, Island Insurance paid Backworks a total of

$4,183.78 for treatments provided to Hayes from November 1, 1993 to November 29, 1993 and December 2, 1993 to January 3, 1994. On December 14, 1994, Island Insurance responded to a "past due" statement for $786.92 from Backworks, stating, in relevant part, as follows:

> In our letter dated October 7, 1994, we stated that this balance was for services performed outside of a valid treatment plan. The treatment plan which was in effect at the time provided for twenty-four (24) sessions between the period of November 10, 1993 through January 3, 1994. The service dates included in this balance due are from January 4, 1994 through January 13, 1994 for a total of five (5) additional treatments.

> Being that these services were performed outside of the treatment plan, we will continue to deny payment for these dates.

(Upper case format omitted.)

On April 4, 1995, Backworks sent an invoice to Island Insurance, requesting payment of the $786.92. On September 12, 1995, Backworks sent Island Insurance an itemized bill and a copy of Hayes's patient ledger, which reflected the dates of services rendered to Hayes that past payments had covered. Handwritten notes on the patient ledger copy indicate that Island Insurance had paid an additional $291.68 of the $786.92 amount claimed under the September 12, 1994 invoice, thereby paying Backworks for services rendered to Hayes on January 4 and 5, 1994. However, Island Insurance refused to pay for treatment services rendered to Hayes on January 7 to 13, 1994, noting that such services exceeded the twelve treatments per month allowed under Hayes's treatment plan.

By a Compromise and Settlement Agreement and Release (the Release) entered into by Hayes, Kam's, and Island Insurance and approved and ordered by the Director of Labor and Industrial Relations on December 14, 1995, Hayes received a lump sum payment of $29,352.00 [1] in exchange for waiving

---

1. The Compromise and Settlement Agreement and Release provided that Plaintiff–Appellant Jerome C. Hayes (Hayes) would receive, in a single

lump sum, "the sum of $29,352.00 as consideration for this compromise and settlement, $3,000.00 of which has been previously advanced

and relinquishing any further right to workers' compensation benefits in connection with or traceable to the May 13, 1993 accident and Hayes's employment with Kam's. As part of the Release, Hayes, Kam's, and Island Insurance agreed that "payment of the foregoing shall be in lump sum upon approval hereof and shall be in addition to all other benefits paid to or for the benefit of [Hayes]." The Release also stated that payment to Hayes constituted "the final consideration of this Agreement and Release and that *NO OTHER PAYMENT OR CONSIDERATION HAS BEEN PROMISED OR WILL BE PAID TO [HAYES]* either directly or indirectly." Additionally, the Release provided that "in the event that [Hayes] pursues and is successful in obtaining recovery whether by way of judgment or settlement in the third-party personal injury claim arising from the accident of May 13, 1993, [Hayes] acknowledges that [Kam's] and [Island In-

surance] retain[ ] [their] rights and remedies pursuant to Section 386–8, *Hawaii Revised Statutes*, [ [2]] as amended." (Footnote added.)

On December 19, 1995, Island Insurance paid in full the lump sum settlement amount it owed Hayes under the Release.[3]

On October 16, 1996, Hayes submitted a written underinsured motorists (UIM) claim to his insurer, First Insurance Company of Hawaii, Ltd. (First Insurance), demanding "the policy limits of all available applicable insurance, representing payment for the injuries [Hayes] sustained" in the May 13, 1993 accident. First Insurance, which coincidentally was also the liability insurer for Henry's, apparently never responded to this letter.

On May 26, 1998, Island Insurance sent Backworks a check for the amount of that portion of the $786.92 invoice that Island

---

to [Hayes], receipt of which is hereby acknowledged, leaving a balance of $26,352.00 payable upon approval hereof."

2. Hawaii Revised Statutes (HRS) § 386–8 (1993) states, in relevant part, as follows:

**Liability of third person.** When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his [or her] employment a legal liability to pay damages on account thereof, the injured employee or his [or her] dependents (hereinafter referred to collectively as the employee) may claim compensation under this chapter and recover damages from such third person.

If the employee commences an action against such third person he [or she] shall without delay give the employer written notice of the action and the name and location of the court in which the action is brought by personal service or registered mail. The employer may, at any time before trial on the facts, join as party plaintiff.

If within nine months after the date of the personal injury the employee has not commenced an action against such third person, the employer, having paid or being liable for compensation under this chapter, shall be subrogated to the rights of the injured employee. Except as limited by chapter 657, the employee may at any time commence an action or join in any action commenced by the employer against such third person.

No release or settlement of any claim or action under this section is valid without the written consent of both employer and employee.

The entire amount of the settlement after deductions for attorney's fees and costs as hereinafter provided, is subject to the employer's right of reimbursement for his [or her] compensation payments under this chapter and his [or her] expenses and costs of action.

. . . .

If the action is prosecuted by the employee alone, the employee shall be entitled to apply out of the amount of the judgment for damages, or settlement in case the action is compromised before judgment, the reasonable litigation expenses incurred in preparation and prosecution of such action, together with a reasonable attorney's fee which shall be based solely upon the services rendered by the employee's attorney in effecting recovery both for the benefit of the employee and the employer. After the payment of such expenses and attorney's fee there shall be . applied out of the amount of the judgment or settlement proceeds, the amount of the employer's expenditure for compensation, less his [or her] share of such expenses and attorney's fee. On application of the employer, the court shall allow as a first lien against the amount of the judgment for damages or settlement proceeds, the amount of the employer's expenditure for compensation, less his [or her] share of such expenses and attorney's fee.

. . . .

. . . [R]eimbursement for compensation payments and expenses under this chapter shall have priority.

3. It appears from the record that Plaintiff–Appellee Island Insurance Company, Inc. (Island Insurance) paid $3,178.48 in attorney's fees on Hayes's behalf and $23,173.52 directly to Hayes.

Insurance had previously refused to pay. Backworks, however, had apparently gone out of business in 1997 (its business registration with the Department of Commerce and Consumer Affairs expired on June 16, 1997) and the check was never cashed.

On April 28, 2000, Hayes filed the underlying complaint against Defendants, seeking damages for Defendants' alleged negligence in causing the May 13, 1993 accident that resulted in Hayes's injuries. Island Insurance moved successfully to intervene as a party plaintiff on May 22, 2000.

Defendants moved for dismissal or summary judgment in their favor on April 3, 2001. They argued that Hayes's suit was barred by the statute of limitations contained within HRS § 431:10C–315(b)(3). Hearings on the summary judgment motion were held on April 25, 2001 and July 16, 2001.

At the April 25, 2001 hearing, Hayes's counsel argued that the two-year statute of limitations for this lawsuit began running on May 26, 1998, the date of Island Insurance's last workers' compensation payment to Backworks. In contrast, Dutro argued that the statute of limitations was triggered on December 19, 1995, the date on which Island Insurance paid the lump sum settlement amount to or on behalf of Hayes in complete satisfaction of Hayes's claim, and, therefore, the statute of limitations had long since lapsed when Hayes filed the underlying complaint on April 28, 2000. Dutro insisted that Island Insurance's unsolicited payment to Backworks of the balance of the previously denied $786.92 invoice could not resurrect the statute of limitations that had already run.

At the close of the hearing, Judge Marks set the motion for further hearing, saying, "I want information about why the payment was made ... May 18th, '98. And basically, before I make a decision one way or another, I want a very full record."

At the subsequent hearing, Dutro's counsel pointed out that, based on depositions taken prior to the hearing, it appeared that the May 18, 1998 payment by Island Insurance to Backworks was prompted by an inquiry from Hayes's counsel about the status of the unpaid medical expenses owed to Backworks. The check was never cashed, however, because Backworks was no longer in existence and had not been in existence at the time Hayes's counsel made the inquiry.

On October 31, 2001, the circuit court granted summary judgment in favor of Defendants:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the [c]ourt relied upon the following key facts 1) that a motor vehicle accident occurred on May 13, 1993 between [Hayes] and [Dutro]; 2) that [Hayes] sought medical treatment for his injuries until July/August 1995; 3) that the work[ers'] compensation settlement was final in December 1995 with final payment being made on December 19, 1995 pursuant to the terms of the settlement; 3) that [Hayes's] attorney requested Plaintiff/Intervenor Island Insurance to make payment in 1998, which was shown in Exhibit "1," which was Dexter Higa's [ (Island Insurance's counsel during the relevant period) ] deposition and Exhibit "2," which was Mr. Furuya's [(Hayes's attorney) ] request to Plaintiff/Intervenor Island Insurance, which were attached to Defendants' Supplemental Memorandum in Support of Motion to Dismiss or in the Alternative, Motion for Summary Judgment; 4) that on May 26, 1998 Plaintiff/Intervenor Island Insurance made payment to [Backworks], 2½ years after the work[ers'] compensation settlement and approximately 2¾ years after the last date of treatment by [Hayes]; and 5) that on April 28, 2000 [Hayes] filed his Complaint. The [c]ourt finds that pursuant to *Cochran v. Pflueger Auto.*, 72 Haw. 460[, 821 P.2d 934] (1991) when work[ers'] compensation benefit payments cease for 2 years, the claim becomes time-barred; and that both *Wright v. State Farm*, 86 Hawai'i 357, 949 P.2d 197 (Haw.App.1997) and *Matsushita v. Container Home Supply*, 6 Haw.App. 439[, 726 P.2d 273] (1986) are distinguishable as well as the doctrine of equitable estoppel; therefore,

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Dismiss or in

the Alternative, Motion for Summary Judgment as to all Claims is hereby granted.

On November 30, 2001, before the foregoing order was made final, Hayes appealed it. Final judgment in favor of Defendants was entered on December 12, 2001, and Hayes filed a second notice of appeal on January 10, 2002.[4] The two appeals (Nos. 24733 and 24829) were later consolidated into appeal No. 24733.

## DISCUSSION

### A.

HRS § 431:10C–315(b) provides the relevant statute of limitations for Hayes's tort lawsuit against Dutro:

> (b) No suit arising out of a motor vehicle accident shall be brought in tort more than the later of:
>
> (1) Two years after the date of the motor vehicle accident upon which the claim is based;
>
> (2) Two years after the date of the last payment of motor vehicle insurance or optional additional benefits; or
>
> (3) *Two years after the date of the last payment of workers' compensation* or public assistance *benefits arising from the motor vehicle accident.*

(Emphases added.)

In *Cochran,* 72 Haw. 460, 821 P.2d 934, the Hawai'i Supreme Court interpreted HRS § 431:10C–315's predecessor statute, HRS § 294–36 (1985), which was essentially similar in language.[5] The supreme court's opinion is worth quoting at length:

> Ann M. Cochran (Cochran), plaintiff-appellant, sustained physical injuries in a one-car accident on July 12, 1982. Cochran was a passenger in the vehicle driven

by defendant-appellee Roland Rodrigues who was working for defendant-appellee Pflueger Automobiles, Inc. at the time of the accident. Cochran's medical care was paid for by the State of Hawaii's Department of Human Services (DHS). By September 2, 1982, Cochran's medical bills had exceeded $3,000.00, the applicable no-fault tort liability threshold, and DHS payments in the amount of $2,289.65 on these accounts were made to her physicians until February 8, 1983. Under the DHS regulations, the payment of these lesser amounts satisfied the obligation of payment for services rendered to Cochran by the service providers. The record on appeal reveals that on the motion for summary judgment, Cochran demonstrated subsequent claims for public assistance benefits for the same injury beginning again in November of 1986 and as late as 1990.

> This case requires us to determine the statutory meaning of [HRS] § 294–36(b)(3), the no-fault statute of limitations for injured parties who claim public assistance benefits arising from a motor vehicle accident. We conclude that when Cochran's medical payments related to the automobile accident ceased for a period of four years, the statute of limitations had run and could not be revived by subsequent medical claims.

> We therefore affirm the trial court's order granting summary judgment in favor of defendants.

> . . . .

> Cochran argues that her claim is not time-barred despite the two year gap in medical payments because those payments were reinstituted in later years because of an alleged aggravation of the original injury. This position is untenable. In 1984 the Legislature amended HRS § 294–36 to

---

4. Island Insurance is not participating in the appeal.

5. Before it was recodified as HRS § 431:10C–315(b) in 1987, HRS § 294–36(b) read:
   (b) No suit arising out of a motor vehicle accident shall be brought in tort more than:
   (1) Two years after the date of the motor vehicle accident upon which the claim is based; or

   (2) Two years after the date of the last payment of no-fault or optional additional benefits; or
   (3) Two years after the date of the last payment of workers' compensation or public assistance benefits arising from the motor vehicle accident; whichever is the last to occur.
   HRS § 294–36(b) (1985).

permit public assistance recipients to enjoy an extended statute of limitations like that provided for persons receiving no-fault payments. Until that time, the statutory omission of HRS § 294–36(b)(3) could be read as limiting public assistance recipients to only the two year post accident provision of the statute of limitations. *See Joshua v. M.T.L., Inc.,* 65 Haw. 623, 656 P.2d 736 (1982). In amending the law and providing that public assistance recipients could maintain a suit for two years after their last payment, the Legislature stated that its intent was to "provide the same deadline for all individuals irrespective of the type of benefit they may be receiving." Hse. Stand. Comm. Rep. No. 693–84, in 1984 House Journal, at 1196. Cochran's reading of the term "last payment" to mean any payment, whenever received, would elevate public assistance recipients to a superior position. The typical no-fault benefit recipient's claim will become time-barred under the statute two years after the last no-fault payment. At that time, HRS § 294–36(a) prevents the no-fault payee from initiating a suit to compel additional payments from its carrier. Thus a tortfeasor can fairly predict when a potential claim against him or her will be time-barred. Unlike a no-fault carrier, DHS will pay medical claims on behalf of its clients for as long as needed. In this regard, it does not act like a typical no-fault carrier. Therefore, Cochran is correct to say that she will never have a "last payment" from DHS related to her injury so long as she is eligible for public assistance.

However, Cochran is incorrect in asserting that her claim can therefore never be time-barred. "The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend." *Levi v. University of Hawaii Professional Assembly,* 67 Haw. 90, 93, 679 P.2d 129, 130 (1984) *quoting* 51 AM. JUR. 2D *Limitations of Actions* § 17. "A statute of limitations is designed to preclude a stale claim where the other party must gather evidence after time has dissipated memories, documents and real evidence." *Mauian Hotel, Inc. v. Maui Pineapple Co.,* 52 Haw. 563, 481 P.2d 310 (1971). A primary objective of Hawaii's no-fault law is to " 'expedite the settling of all claims.' " *Wiegand v. Allstate Ins. Cos.,* 68 Haw. 117, 121, 706 P.2d 16, 19 (1985). With these fundamental principles in mind, Cochran's reading of HRS § 294–36(b)(3) would lead to an irrational result, inconsistent with these fundamental principles.

We therefore conclude that the proper reading of the no-fault statute of limitations provided by HRS § 294–36(b)(3) is that when public assistance payments on an injury cease for two years, the claim becomes time-barred.

*Cochran,* 72 Haw. at 461–64, 821 P.2d at 934–36 (footnotes and internal brackets omitted).

■ While *Cochran* dealt with a "public assistance" benefit rather than a "workers' compensation" benefit, the supreme court, in *Cochran,* quoted the Hawai'i legislature as stating that the legislative intent in enacting HRS § 294–36 was to "provide the same deadline for all individuals irrespective of the type of benefit they may be receiving." *Id.* at 463, 821 P.2d at 936 (quoting Hse. Stand. Comm. Rep. No. 693–84, in 1984 House Journal, at 1196) (internal brackets and quotation marks omitted). Given this clear language as to legislative intent, there seems to be no logical reason for the statute of limitations for a lawsuit arising from a motor vehicle accident to be interpreted differently for injured parties who receive "workers' compensation" benefits rather than "public assistance" or "no-fault" benefits.

The supreme court's holding that when "payments on an injury cease for two years, the claim becomes time-barred" precludes Hayes's suit in this case. *Cochran,* 72 Haw. at 464, 821 P.2d at 936. Island Insurance made its lump sum payment to Hayes in full satisfaction of the Release on December 19, 1995. The statute of limitations thus barred any suit filed by Hayes after December 19, 1997, and Hayes's negligence action filed on April 28, 2000 was time-barred. The fact that Island Insurance sent a check to Backworks on May 26, 1998 for a prior unpaid invoice did not revive the statute of limitations.

### B.

■ Hayes also argues that his October 16, 1996 application to First Insurance for UIM benefits should have tolled the statute of limitations because it is "uncontroverted . . . that [he] has not received a denial or any other disposition of said claim." According to Hayes, the present case is similar to *Wright v. State Farm Mut. Auto. Ins. Co.*, 86 Hawai'i 357, 949 P.2d 197 (App.1997), and *State Farm Mut. Auto Ins. Co. v. Murata*, 88 Hawai'i 284, 965 P.2d 1284 (1998). In both *Wright* and *Murata*, the statute of limitations was held to have been tolled because of inaction on the part of the plaintiff's insurer.

In *Wright*, the plaintiff, Wright, was injured in an automobile accident on March 14, 1987. *Wright*, 86 Hawai'i at 359, 949 P.2d at 199. His insurer, State Farm Mutual Automobile Ins. Co. (State Farm), made its final no-fault payment on December 5, 1991. *Id.* Near the end of 1992, Wright's injury was exacerbated and he underwent more treatment in early 1993. *Id.* He informed State Farm of the treatment within days and filed the appropriate paperwork in the summer of 1993. *Id.* In February 1994, State Farm denied Wright's claim. *Id.* at 359–60, 949 P.2d at 199–200. Wright filed a request for arbitration in October 1994. *Id.* at 360, 949 P.2d at 200. State Farm later moved to dismiss Wright's claim on grounds that the statute of limitations for Wright's request for arbitration (HRS § 431:10C–315(a)(2))[6] had technically run out on December 5, 1993, two years after the last payment of benefits. *Id.* at 361, 949 P.2d at 201. Although State Farm's motion was granted by the trial court, this court reversed:

> Here, Wright made his claim eleven months before the limitations period ran. State Farm took over a year thereafter to determine whether to accept or reject the claim, allowing the ostensible statute of limitations on Wright's claim to run in the meantime. The promise to Wright of "certainty and promptness of reparations for injuries" which is a cornerstone of the no-fault law was rendered nugatory by this delay. An insurer could, inadvertently or otherwise, render Wright's claim untimely simply by postponing or delaying its determination.

*Id.* at 361–62, 949 P.2d at 201–02.

*Murata* involved a similar fact pattern. The plaintiff, Murata, was injured in a car accident on July 31, 1987. *Murata*, 88 Hawai'i at 285, 965 P.2d at 1285. Murata applied successfully for no-fault benefits from her insurer, State Farm, on August 10, 1987, and the last of these payments was made on February 15, 1989. *Id.* at 286, 965 P.2d at 1286. During this time, State Farm and Murata's attorney had been corresponding regarding Murata's attempt to sue Hawaiian Holiday Macadamia Nut Company (Hawaiian Holiday), the company that owned the van that had injured Murata. *Id.* On February 15, 1991, Murata sued Hawaiian Holiday, but, in 1993, that suit was stayed because Hawaiian Holiday had entered bankruptcy proceedings. *Id.* Murata's attorney then wrote to State Farm, informing State Farm of this turn of events and requesting that State Farm grant Murata her uninsured motorist (UM) benefits. *Id.* at 286–87, 965 P.2d at 1286–87. State Farm never expressly granted or denied Murata her benefits but, instead, on April 4, 1996, filed an action seeking a declaration that Murata's application for UM benefits was barred by HRS § 294–36(a).[7] *Id.* at 287, 965 P.2d at 1287. The trial court granted State Farm summary

---

**6.** HRS § 431:10C–315(a) (Supp.2003) states now, as it did when Hayes's lawsuit was filed:

> **Statute of limitations.** (a) No suit shall be brought on any contract providing motor vehicle insurance benefits or any contract providing optional additional coverage more than the later of:
> (1) Two years from the date of the motor vehicle accident upon which the claim is based;
> (2) *Two years after the last payment of motor vehicle insurance benefits;*
> (3) Two years after the entry of a final order in arbitration;

> (4) Two years after the entry of a final judgment in, or dismissal with prejudice of, a tort action arising out of a motor vehicle accident, where a cause of action for insurer bad faith arises out of the tort action; or
> (5) Two years after payment of liability coverage, for underinsured motorist claims.
> (Emphasis added.)

**7.** HRS § 294–36(a) was subsequently recodified as HRS § 431:10C–315(a) (*see* footnote above).

judgment, but the supreme court vacated, citing *Wright:*

> Although *Wright* involved an allegedly untimely request for arbitration regarding no-fault benefits, rather than an allegedly untimely claim for UM benefits, its reasoning applies with equal force to the instant case. The legislature could not have intended to allow insurers to extinguish an insured's right to UM benefits merely by delaying its response to the insured's claim until the statute of limitations has run. We therefore hold that a claim for UM benefits, proffered within the period prescribed by the governing statute of limitations as set forth in HRS § 249-36(a) [sic], will toll the running of the statute until such time as the claim is denied.

*Id.* at 289, 965 P.2d at 1289. The court went on to hold that it could not decide, as a matter of law, whether Murata had made a valid "claim" for UM benefits when she first applied for general benefits in 1987 (which would have been within the statute of limitations). *Id.* at 289-90, 965 P.2d at 1289-90. The court felt obliged to vacate summary judgment in favor of State Farm and remand for further proceedings. *Id.* at 291, 965 P.2d at 1291.

Both *Wright* and *Murata* addressed the tolling of the statute of limitations in the first-party context, i.e., where the insured sues his or her insurer for additional optional benefits. Both decisions were premised on the need to preclude an insurer's tardiness from preventing a lawsuit by the insured. The present case, in contrast, involves a third-party claim, and First Insurance's failure to respond to Hayes's premature UIM claim did not, in any way, prevent Hayes from suing Defendants within the applicable statute of limitations period.

Hayes's implicit argument—that he could not sue Defendants for negligence until First Insurance decided his UIM benefits claim—is unsupportable. As the supreme court recently explained in *Taylor v. Government Employees Ins. Co.*, 90 Hawai'i 302, 978 P.2d 740 (1999), a suit (or a settlement) against alleged tortfeasors must be made *before*, not after, the insured can seek UIM benefits:

> We note that, in voiding exhaustion clauses in UIM policies as against public

policy, we do not mean to suggest that the injured party may seek UIM benefits before resolving the bodily injury claim with the tortfeasor through settlement or judgment. UIM coverage contemplates that, "if an underinsured tortfeasor is involved, his or her victim may not pursue his or her contractual UIM right against his or her own liability insurer until he or she has first recovered from the tortfeasor by settlement or judgment." [538 A.2d] at 416. This rule acts to prevent the inconsistency that might result if insured victims were permitted simultaneously to arbitrate claims with their UIM carriers and proceed to trial with tortfeasors. Of course, while an injured insured's right to UIM benefits does not vest until he or she has concluded a settlement with or obtained a judgment from the tortfeasor, a UIM carrier remains free to tender UIM benefits at any time.

*Taylor,* 90 Hawai'i at 313, 978 P.2d at 751 (internal brackets and ellipses omitted).

### C.

Finally, Hayes asks the court to use its equity powers to waive the statute of limitations because Defendants were aware that a lawsuit might be filed against them and they were "not prejudiced by [the seven-year] delay." Were this court to waive statutes of limitations every time a defendant knew of a possible lawsuit and could not show prejudice at the summary judgment stage, the utility of such statutes would be lost. Hayes had four and a half years—from May 13, 1993 (the date of the accident) to December 19, 1997 (two years after Island Insurance's lump sum payment)—to sue Defendants but neglected to do so. The record contains no indication of extraordinary circumstances that prevented Hayes from filing a negligence action against Defendants within the applicable statute of limitations.

The circuit court thus correctly held that *Cochran* bars Hayes's suit.

Judgment affirmed.